**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>*Plaintiff*,<br><br>v.<br><br>**A TOTAL OF $10,000.00 IN U.S. CURRENCY,**<br><br>*Defendant in Rem.* | Civil Action No. 15-8121<br><br>**OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

This matter comes before the Court on Plaintiff United States of America's ("Plaintiff" or "the Government") motion for the entry of default judgment and final order of forfeiture of a total of $10,000.00 in U.S. currency ("Defendant Property") pursuant to Federal Rule of Civil Procedure 55(b). Dkt. No. 5. For the reasons set forth herein, the motion is **GRANTED**.

**I.     BACKGROUND**

On December 9, 2011, following an investigation by the U.S. Department of Health and Human Services, Office of the Inspector General ("HHS-OIG"), the Government filed a Criminal Complaint in the District of New Jersey, charging John Green ("Green"), a licensed physician, for his involvement in a kickback scheme with a diagnostic testing company called Orange Community MRI, LLC ("OCM"). Compl. ¶¶ 15-16. On or about December 5, 2013, Green pleaded guilty to a one-count Information, which charged him with violating the federal health care anti-kickback statute, 42 U.S.C. § 1320a-7b(b)(l)(A), for allegedly receiving cash payments from OCM in exchange for referring Medicare and Medicaid patients to OCM for diagnostic

1

testing.  Id. ¶ 16.

During its investigation, HHS-OIG learned that Green was involved in a separate kickback scheme with Laboratory A, an Edison-based lab that performs medical testing and analyses of specimens.  Id. ¶¶ 18-20.  On April 30, 2009, Green allegedly entered into a lease agreement with Laboratory A, which provided that the lab would pay Green $2,500 per month in exchange for renting a room in Green's medical office, where patients would have their blood drawn.  Id. ¶¶ 21-22.  The agreement provided that Laboratory A would make rental payments to "Daisy Associates," and mail the checks to the same address as Green's medical office.  Id. ¶ 23.  HHS-OIG searched public records and discovered that there was no business named Daisy Associates located at that address.  Id. ¶ 24.

In a May 6, 2012 interview with a Special Agent from HHS-OIG, Green admitted that Laboratory A's rent payments were actually kickbacks in exchange for sending blood samples to Laboratory A for testing and analysis.  Id. ¶ 25.  Some of the patients whose blood samples were sent to Laboratory A were insured by Medicare and Medicaid.  Id.

In a June 12, 2012 interview with a Special Agent from HHS-OIG, Green stated that an official with Laboratory A ("Individual A") would hand deliver checks to him on a monthly basis.  Id. ¶ 27.  Green would submit claims to Medicare for the venipuncture fees from the blood samples he referred to Laboratory A.  Id.  Green also stated that he discussed the kickback payments with a marketing representative for various medical practices, including Laboratory A ("Individual B").  Id.  Individual B told Green that Individual A no longer wanted to pay $2,500 per month because of the low volume of blood samples Green was sending to Laboratory A.  Id. ¶¶ 27-28.  Sometime afterwards, Laboratory A stopped sending kickback payments to Green, so Green stopped sending blood samples to Laboratory A.  Id. ¶ 29.  Individual A then visited Green and discussed lowering

2

the monthly payments from $2,500 to $1,000.  Id.

Sometime after January 2011, Individual A told Green that their referral agreement was no longer legal due to changes in the law, and thus payments would have to be sent in cash, rather than check.  Id. ¶ 30.  Green agreed to receive the payments in cash.  Id.

On or about July 19, 2012, Green turned over $6,000 to two Criminal Investigators with the U.S. Attorney's Office for the District of New Jersey.  Id. ¶ 31.  The $6,000 represented kickback payments that Green had received from Laboratory A.  Id.  On or about October 23, 2012, the Criminal Investigators turned over the $6,000 to HHS-OIG.  Id.

On or about September 27, 2012, Green received a Federal Express package containing two wrapped bundles of $100 bills, each totaling $1,000 in U.S. currency.  Id. ¶ 32.  The sender of the package was listed as Medical Consulting and listed a return address of 509 Madison Avenue, New York, New York.  Id.  According to public records, there is no company named Medical Consulting located at that address.  Id. ¶ 33.  After Green notified HHS-OIG of the package, he turned over the package and currency to Special Agents on September 28, 2012.  Id. ¶ 34.

On or about January 31, 2013, Green received another Federal Express package, also containing two wrapped bundles of $100 bills, each totaling $1,000 in U.S. currency.  Id. ¶ 35.  The name and address of the sender was the same as the first package.  Id. ¶ 35-36.  After receiving the second package, Green telephoned Individual A and thanked her for the package.  Id. ¶ 37.  Green told Individual A that the funds were approximately $3,000 short of the money he was owed based on their agreed-upon $1,000 monthly referral payments.  Id.  Individual A did not deny knowledge of the package or the agreement, and indicated that she would have to speak to another person and get back to him.  Id.  Green turned the second package and currency over to Special Agents.  Id. ¶ 38.

On November 17, 2015, the Government filed a Verified Complaint seeking the forfeiture of $10,000.00 in U.S. currency, Dkt. No. 1, and obtained a warrant for arrest *in rem*, Dkt. No. 2. The Defendant Property is currently in the possession of the United States and is stored at a secure storage area at the Edison Field Office of HHS-OIG.  Compl. ¶¶ 2-3.  The Verified Complaint asserts that the Defendant Property constituted or was derived from proceeds traceable to a violation of 42 U.S.C. § 1320a-7b(b)(2) or a conspiracy to commit such an offense.  Id. ¶ 41.  The Government contends that the Defendant Property is thus subject to condemnation and forfeiture to the United States under 18 U.S.C. § 981(a)(l)(C).  Id. ¶ 42.

On November 18, 2015, the Government filed a Notice of Verified Complaint for Forfeiture *in Rem* ("Notice").  Dkt. No. 3.  The Notice stated that any person who wished to assert an interest in the Defendant Property was required to file a verified claim within thirty-five days after the Notice was sent or the date of delivery, if personally served.  Id. at 2.  As the Government had learned that Excell Clinical Lab, Inc. ("Excell")[1] and Green had potential claims to the Defendant Property, it sent copies of the Verified Complaint and Notice by certified mail, return receipt requested, to Excell and Green's last known addresses, as well as to Green's attorneys, Kevin Buchan and James Plaisted.  Devlin Decl. ¶¶ 4-5.  The documents were delivered to Excell and James Plaisted on or about November 20, 2015, and to Kevin Buchan on or about November 24, 2015.  Id. ¶¶ 6-7.  Copies of the Verified Complaint and Notice sent to Green were returned to the U.S. Attorney's Office, so the Government also sent them by regular mail to Green's last known addresses.  Id. ¶ 8.  Two of three of those mailings were returned to the U.S. Attorney's Office.  Id.  In addition, the Government posted notice of the instant forfeiture action on its official

---

[1] Although not explicitly stated in the Government's submissions, it appears that Excell is the lab referred to as "Laboratory A" in the Verified Complaint.

4

forfeiture website, www.forfeiture.gov, for thirty consecutive days through February 24, 2015.  Id. ¶ 9.

No claims or answers were filed in this action, no parties have appeared to contest the action to date, and the time period to do so has expired.  Id. ¶ 10.  The Government requested, and the Clerk entered, default against the Defendant Property on April 14, 2016.  Dkt. No. 4.

## II.   STANDARD OF REVIEW

"The district court has the discretion to enter default judgment, although entry of default judgments is disfavored as decisions on the merits are preferred."  Animal Sci. Prods., Inc. v. China Nat'l Metals & Minerals Imp. & Exp. Corp., 596 F. Supp. 2d 842, 847 (D.N.J. 2008) (quotation omitted).  When evaluating a motion for default judgment, courts consider (1) whether the party subject to the default has a meritorious defense; (2) the prejudice suffered by the party seeking default judgment; and (3) the culpability of the party subject to default.  Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).  Although the facts pled in the Complaint are accepted as true for the purpose of determining liability, the plaintiff must prove damages.  See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990).

## III.   ANALYSIS

### A.  Procedural Requirements for Civil Asset Forfeiture

Civil asset forfeiture actions *in rem* are governed by Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") and 18 U.S.C. § 983.  Under Rule G, the government must file a verified complaint that states the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the property, and venue; describes the property with reasonable particularity; states the property's location when any seizure occurred and its location when the action is filed; identifies the statute under which the forfeiture action is brought;

and provides sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.  See Supp. R. Certain Adm. & Mar. Cl. G(2).

If the property is not real property and is already in the government's possession, custody, or control, the Clerk must issue a warrant to arrest the property before it can be seized.  Id. at § 3(b).  Once the arrest warrant is issued, the government may arrest the property pursuant to the warrant.  Id. at § 3(c).  And finally, the government must publish notice of the forfeiture action for any potential claimants that it is not aware of, and must give direct notice to any potential claimants that it is aware of.  Id. at § 4.  For potential claimants that the government does not know, the government must publish notice within a reasonable time after the Verified Complaint is filed, which may be satisfied by posting a notice on an official internet government forfeiture site for at least thirty consecutive days.  Id. at § 4(a)(iv)(C).  For potential claimants known to the government, the government must send notice of the action and a copy of the Verified Complaint "by means reasonably calculated to reach the potential claimant," including to the potential claimant directly or to his attorney.  Id. at § 4(b)(iii).

To make a claim for the property and avoid potential forfeiture, a potential claimant must file a claim that conforms to Rule G(5)(a) of the Supplemental Rules and 18 U.S.C. § 983(a)(4)(A).  Rule G(5)(a) provides that the potential claimant must file a claim in the court where the action is pending that identifies the specific property claimed, identifies the claimant and the claimant's interest in the property, is signed by the claimant under penalty of perjury, and is served on the government's attorney.  Under 18 U.S.C. § 983(a)(4)(A), the claim must be filed no later than thirty days after the date of service of the government's Verified Complaint or no later than thirty days after the date of final publication of notice of the filing of the Verified Complaint.

### B.  The Government Has Satisfied the Procedural Requirements

The Government has met the requirements of Rule G and 18 U.S.C. § 983.  On November 17, 2015, the Government filed a Verified Complaint seeking the forfeiture of $10,000.00 in U.S. currency.  The Verified Complaint asserts that this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355(a), and *in rem* jurisdiction over the Defendant Property under 28 U.S.C. § 1355(b).  Compl. ¶¶ 4-6.  It also describes the Defendant Property with reasonable particularity, in that it describes the amounts and form in which the money was received, as well as the location and circumstances of its seizure.  Id. ¶¶ 30-38.

The Government also adequately identifies the statutory basis for this action.  See Compl. ¶¶ 8-11.  Specifically, pursuant to 18 U.S.C. § 981(a)(l)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to any offense constituting "specified unlawful activity" (as defined in section 18 U.S.C. § 1956(c)(7)), or a conspiracy to commit such offense, is forfeitable to the United States.  Under 18 U.S.C. § 1956(c)(7)(F), "specified unlawful activity" means "any act or activity constituting an offense involving a Federal health care offense."  A "Federal health care offense" includes a violation of 42 U.S.C. § 1320a-7b.  See 18 U.S.C. § 24(a)(1).  And pursuant to 42 U.S.C. § 1320a-7b(b)(l)(A), it is a felony for a person to "knowingly and willfully solicit[] or receive[] any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind . . . in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program."

In addition, the Verified Complaint provides sufficient facts to support a reasonable belief that the Government will be able to meet its burden at trial.  The Complaint details a kickback scheme where Green, a licensed physician, would receive monthly "rental" payments in exchange

7

for sending blood samples of Medicare and Medicaid patients to Laboratory A for testing and analysis. Compl. ¶¶ 19-39. During the course of the Government's investigation, Green turned over $10,000 in "rental" payments, which the Government now seeks in the instant forfeiture action. Id. Accepted as true for the purposes of this motion, see Comdyne, 908 F.2d at 1149, these facts are sufficient to establish a reasonable belief that the Government would be able to prove at trial that the Defendant Property constituted, or was derived from, proceeds traceable to a violation of 42 U.S.C. § 1320a-7b(b)(2) or a conspiracy to commit such an offense.

Finally, the Government followed the proper procedures after filing the Verified Complaint. On November 17, 2015, the Government requested and received a warrant to arrest the Defendant Property. The following day, the Government posted a Notice of Verified Complaint for Forfeiture *in Rem* on the docket. The Notice stated that any person who wished to assert an interest in the Defendant Property must file a verified claim within thirty-five days after the Notice was sent or the date of delivery, if personally served. The Government also successfully mail copies of the Verified Complaint and Notice to Green's attorneys and Excell, and made reasonable efforts to deliver the documents to Green. And finally, the Government published the Notice on its official forfeiture website, www.forfeiture.gov, for thirty consecutive days.

### C. No Potential Claimant Has Filed a Claim

The requirement that a potential claimant file a verified claim "'is no mere procedural technicality.'" United States v. $487,825.000 in U.S. Currency, 484 F.3d 662, 665 (3d Cir. 2007), as amended (May 14, 2007) (quoting United States v. $23,000 in U.S. Currency, 356 F.3d 157, 163 (1st Cir. 2004)). "Because of the important interests served by requiring a verified statement, district courts are entitled to insist upon procedural regularity." Id. There have been no claims filed for the Defendant Property in this matter. As a claim must be filed no later than thirty days

after the date of service of the government's Verified Complaint or no later than thirty days after the date of final publication of notice of the filing of the Verified Complaint, the time period to file a claim has expired.  See 18 U.S.C. § 983(a)(4)(A).

### D.  Default Judgment is Appropriate

Default judgment is appropriate under the circumstances.  As an initial matter, the Government is entitled to default judgment because no potential claimants have filed a verified claim or valid answer to the Verified Complaint.  $487,825.000, 484 F.3d at 664; United States v. Assorted Jewelry Valued at $13,430.00, No. 11-0777, 2013 WL 775542, at *2 (D.N.J. Feb. 28, 2013).  As the Government posted the forfeiture notice on its website and made reasonable efforts to directly notify any known potential claimants, any potential claimants bear the responsibility for their failure to file a verified claim.  United States v. $75,000 in U.S. Currency, No. 14-7633, 2015 WL 3409468, at *4 (D.N.J. May 27, 2015).  Moreover, the Government would suffer prejudice if default judgment and final order of forfeiture were denied, because it does not have any alternate remedy against the Defendant Property.  United States v. $16,010.00 in U.S. Currency, No. 11-945, 2011 WL 2746338, at *6 (D.N.J. July 13, 2011).  Thus, the Court will enter default judgment in favor of the Government and will order forfeiture of the Defendant Property.

### IV.  CONCLUSION

For the reasons set forth above, Plaintiff's motion for final judgment by default against Defendant and for a final order of forfeiture is **GRANTED**.  No right, title, or interest in the Defendant Property shall exist in any other party.  An appropriate Order accompanies this Opinion.

**Dated: November 22, 2016**

*/s Madeline Cox Arleo*
**MADELINE COX ARLEO**
**United States District Judge**